UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

JONATHAN BRADLEY,

                Plaintiff,                04 Civ. 8411

   -against-                                OPINION

ALEXIS JUSINO, et al.,

                Defendants.

------------------------------------X

A P P E A R A N C E S:

    Attorneys for Plaintiff

    JAMES I. MEYERSON, ESQ.
    396 Broadway, Suite #601
    New York, NY 10013

    JEFFREY ROTHMAN, ESQ.
    315 Broadway, 2nd Floor
    New York, NY 10007

    Attorneys for Defendant

    MICHAEL A. CARDOZO
    Corporation Counsel of the City of New York
    100 Church Street
    New York, NY 10007
    By:  Dara L. Weiss, Esq.
         Elizabeth W. Dollin, Esq.
         Susan M. Halatyn, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/15/08

**Sweet, D.J.**

Plaintiff Jonathan Bradley ("Bradley" or the "Plaintiff") has moved under Rules 50(b), 51, and 59, Fed. R. Civ. P., to set aside the verdict of the jury granting defendant Alexis Jusino ("Jusino") qualified immunity with respect to the false arrest claim against him, or, alternatively, for a new trial on that claim. Bradley has also moved pursuant to Rule 59, Fed. R. Civ. P., for a new trial on his malicious prosecution claim against Jusino, his false arrest claim against defendant Sergeant Walter Charles ("Charles"), and his supervisory liability claims against Chief Bruce Smolka ("Smolka"), Chief Patrick Dudgeon ("Dudgeon"), and Chief Michael Esposito ("Esposito"). For the reasons set forth below, the motion for a new trial on the false arrest claim against Jusino, as well as on Jusino's qualified immunity defense, is granted. Bradley's motions for a new trial on his malicious prosecution claim against Jusino, false arrest claim against Charles, and supervisory liability claims against Smolka, Dudgeon, and Esposito are denied.

This motion deals with one difficult issue arising out of the arrest of Bradley during an anti-war

1

demonstration on March 22, 2003. This action is one of
many arising out of similar demonstrations. The resolution
of the defense of qualified immunity for the false arrest
claim, a matter on which the parties differed, principally
at the time of the charge conference, was not appropriate,
and therefore a new trial is required.

**Prior Proceedings**

This action was initiated by Bradley on October
26, 2004, in which he asserted claims for false arrest,
excessive force, property destruction, and supervisory
liability against Jusino, the officer who arrested him in
Washington Square Park at the close of an anti-war
demonstration on March 22, 2003, and against defendant
Sergeant Walter Charles and various supervisory officers,
Smolka, Dudgeon, and Esposito, as well as the City of New
York.

The defendants moved for summary judgment before
Magistrate Michael H. Dolinger. His Report and
Recommendation denied the motion. The Report and
Recommendation was affirmed by an opinion and order dated

January 25, 2007 (the "January 25, 2007 Opinion"), No. 04 Civ. 8411 (RWS), 2007 U.S. Dist. LEXIS 7811, stating:

> Defendants' first contention--that Defendants are entitled to qualified immunity on Plaintiff's false arrest claim because Plaintiff's clearly established constitutional rights were not violated--is without merit. Defendants argue that Defendants could not have known that their conduct in arresting Plaintiff was clearly unlawful on the grounds that the arrest was justified by the circumstances, including the need to maintain order, Plaintiff's failure to disperse after a police order to do so, and Plaintiff's physical actions while on the ground, which Defendants contend 'reasonably constitute civil disobedience.'. . . . However, as discussed above, *the factual circumstances surrounding Plaintiff's arrest are in dispute and are material to a determination of the reasonableness of Defendants' actions* . . . .
>
> Defendants' second contention that Defendants possessed 'arguable' probable cause to arrest Plaintiff, is equally unavailing. As Defendants point out, arguable probable cause exists when 'a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well established law.'
>
> As set forth above, there is a triable issue of fact with respect to whether probable cause existed to arrest Plaintiff. *Furthermore, based on the record before this Court, Defendants have not demonstrated that a reasonable officer in the same circumstances would have believed that probable cause existed. Drawing all inferences in favor of Plaintiff and assuming Plaintiff's allegations to be true, it cannot be said that a reasonable officer would have believed probable cause to arrest Plaintiff existed.*

3

January 25, 2007 Opinion, 2007 U.S. Dist. LEXIS 7811, at *28 (emphasis added) (internal citations omitted).

The action was tried before a jury from January 29, 2007, to February 9, 2007. The jury charge on qualified immunity, as read aloud in the courtroom, stated as follows:

> Qualified immunity occurs if a defendant proves—and the defendant has the burden of proof—that he neither knew or should have known that his acts were contrary to federal law.
>
> The simple fact that a defendant acted in good faith is not enough to bring him within the protection of qualified immunity. Nor is the fact that a defendant was unaware of federal law. A defendant is entitled to qualified immunity if he did now know in the situation that he confronted that what he did was in violation of federal law. Or, if a competent public official could not have been expected at that time to know that his conduct was in violation of federal law.
>
> In determining what a competent official would have known about the legality of a defendant's conduct, you may consider the nature of the defendant's official duties, the character of his official position, the information which was known to him, or not known to him, and the events which confronted him.
>
> The issue is what a reasonable official in the defendant's situation would have believed about the legality of his conduct. You should not consider what the defendant's subjective intent was, even if you believe it was to harm Bradley.
>
> I have described to you the law of unlawful arrest and detention, excessive force, and malicious prosecution. If any defendant proves by a preponderance of the

4

evidence that a reasonable police officer in his position would have known, or could reasonably disagree, that his actions violated federal law as I have described it to you, then you return a verdict for that defendant. Even though you have previously found that the defendant violated Bradley's rights under color of state law.

A special verdict was returned on February 9, 2007, upon which a judgment was entered on February 20, 2007. The jury answered "Yes" to Questions 1 and 2 of the Special Verdict Form. Question 1 asked whether Jusino arrested Bradley without probable cause. Question 2 asked whether Jusino was entitled to qualified immunity.

Counsel for Bradley discussed the verdict with the jurors post-verdict and has submitted an affidavit stating their concern with a verdict which certain members of the jury felt was unjust and had been compelled by the Special Verdict Form and the charge to the jury with respect to qualified immunity. Counsel to the defendants has challenged certain of these statements and the use of the post-verdict discussion with jurors.

Because the trial transcript was not yet available to the parties when they briefed the instant motions, neither party has cited to it.

The instant motions were heard and marked fully submitted on May 2, 2007.

**The Facts**

The testimony at trial established certain facts which follow and, in the main, were not disputed. However, Bradley and Jusino differed materially with respect to the particulars of the arrest.

On March 22, 2003, Bradley participated in an anti-war demonstration and march that commenced in the Times Square area and concluded in Washington Square Park. While the Demonstration was expected to draw approximately fifteen to twenty thousand participants, it drew upwards of one hundred thousand participants.

Bradley was arrested on the sidewalk near the Washington Square Park West and Washington Place intersection. He fell down while Jusino was advancing in a

6

line of police officers. Jusino testified that he reached down to assist Bradley in getting up and stated: "Guy, get up." According to Jusino, Bradley went "limp," and Bradley was arrested in an incident that took no more than about ten seconds.

## The Standard under Rule 50 and Rule 59

A motion for judgment as a matter of law pursuant to Rule 50(b) is appropriately granted only when the Court determines that "there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 120 (2d Cir. 1998). In connection with a 50(b) motion, "the trial court is required to consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence." Tolbert v. Queens College, 242 F.3d 58, 70 (2d Cir. 2001) (quoting Smith v. Lightening Bolt Prods., Inc., 861 F.2d 363, 367 (2d Cir. 1988)). "The court cannot assess the weight of conflicting evidencing, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." Id. Moreover:

> In making its evaluation, the court should
> 'review all the evidence in the record,' but 'it
> must disregard all evidence favorable to the
> moving party that the jury is not required to
> believe. . . . That is, the court should give
> credence to the evidence favoring the nonmovant
> as well as that evidence supporting the moving
> party that is uncontradicted and unimpeached, at
> least to the extent that the evidence comes from
> disinterested witnesses.

Id. (emphasis in original, internal citations omitted) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000)).

According to Bradley, "Plaintiff's Rule 50(b) Motion is very narrow in scope. The Plaintiff seeks to have the Court set aside that portion of the jury's verdict that, notwithstanding the jury recorded verdict that Defendant Jusino 'did . . . arrest and detain Jonathan Bradley without probable cause in violation of Bradley's constitutional right,' nevertheless, Jusino was entitled to qualified immunity thereby shielding him from any legal liability for his unconstitutional conduct and the damages to the Plaintiff flowing from such." Pet. Reply Mem. at 2.

8

The standard for granting a new trial pursuant to Rule 59, Fed. R. Civ. P., is less stringent than that for judgment as a matter of law. See Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970 (2d Cir. 1987); Bseirani v. Mahshie, 881 F. Supp. 778, 783 (N.D.N.Y. 1995), aff'd, 107 F.3d 2 (2d Cir. 1997). On a motion for new trial, the judge may grant a new trial even if there is substantial evidence to support the jury's verdict. Song v. Ives Laboratories, Inc., 957 F.2d 1041, 1047 (2d Cir. 1992). The court may weigh the evidence for itself without viewing it in the light most favorable to the verdict winner. See id. (citation omitted); Paper Corp. of the U.S. v. Schoeller Technical Papers, Inc., 807 F. Supp. 337, 347 (S.D.N.Y. 1992). Still, a new trial may only be granted if the court is convinced that "the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133 (2d Cir. 1998) (citing Song, 957 F.2d at 1047 (2d Cir. 1992)) (internal quotation marks omitted); see also Farrior v. Waterford Bd. of Ed., 277 F.3d 633, 635 (2d Cir. 2002). Moreover, "[w]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new

9

trial." Piesco v. Koch, 12 F.3d 332, 345 (2d Cir. 1993) (citing Metromedia Co. v. Fugazy, 983 F.2d 350, 361 (2d Cir. 1992), cert. denied, 508 U.S. 952 (1993)) (internal quotation marks omitted).

On the record evidence in this case, judgment as a matter of law pursuant to Fed. R. Civ. P. 50 regarding Jusino's qualified immunity defense is not appropriate, as, viewing the evidence in the light most favorable to Jusino, and giving Jusino the benefit of all credibility assessments and all reasonable inferences the jury may have made, the Court cannot declare as a matter of law that Jusino is not entitled to qualified immunity.

However, on the record evidence, and in light of the jury's predicate finding of the unconstitutionality of the Plaintiff's arrest, it is appropriate to grant Bradley's motion for a new trial pursuant to Fed. R. Civ. P. 59. Although there may have been substantial evidence supporting the jury's determination that Jusino was entitled to qualified immunity, the Court erred in submitting the question of qualified immunity to the jury. Under the Second Circuit's decision in Stephenson v. Doe, 332 F.3d 68 (2d Cir. 2003), and its progeny, Jusino's

qualified immunity defense was a question of law for the Court to resolve.

As the Second Circuit stated in Jenkins v. City of New York, 478 F.3d 76 (2d Cir. 2007), "[u]nder federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." Id. at 87 (citing Cerrone v. Brown, 246 F.3d 194, 199 (2d Cir. 2001)) (internal quotation marks and citations omitted); see also Anderson v. Creighton, 483 U.S. 635, 641 (1987). As the statutory or constitutional right at issue here is clearly established as a matter of law, the availability of a qualified immunity defense "turns on whether the [defendant's] probable cause determination was objectively reasonable." Jenkins, 478 F.3d at 87. "An officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" Id. (quoting Lennon v. Miller, 66 F.3d 416, 423-24 (2d Cir. 1995)).

11

Whether an officer's conduct was objectively reasonable is a mixed question of law and fact. See Zellner v. Summerlin, 494 F.3d 344, 367 (2d Cir. 2007) (citing Kerman v. City of New York, 374 F.3d 93, 108-09 (2d Cir. 2004)). As the Second Circuit outlined in Stephenson, when there is a dispute as to the historical facts material to the determination of whether the officer's conduct was reasonable, those facts should be decided by the jury. Stephenson, 332 F.3d at 81; see also Zellner, 494 F.3d at 368; Warren v. Dwyer, 906 F.2d 70, 76 (2d Cir. 1990); accord id. at 76, 77 (Winter, J., dissenting).

Since a "court ruling on the qualified immunity issue must know what the facts were that the officer faced or perceived, and the finding of those facts appears to be a matter for the jury," Warren, 906 F.2d at 77 (Winter, J., dissenting), courts have agreed that the use of special interrogatories is an appropriate means by which the jury should express its determination of the facts, leaving the court to "make the ultimate legal determination of whether qualified immunity attaches on those facts." Stephenson, 332 F.3d at 81 (citing Warren, 906 F.2d at 77); Lee v. McCue, No. 04 Civ. 6077 (CM), 2007 U.S. Dist. LEXIS 57867,

12

at *7 (S.D.N.Y. July 25, 2007); cf. Oliviera v. Mayer, 23 F.3d 642, 650 (2d Cir. 1994).

Although the Second Circuit has not explicitly ruled that the issue of qualified immunity must always be resolved by the court, precedent in this circuit offers strong support for the conclusion that the issue is most appropriately left for the court to determine after the jury has found all material facts. See Curley v. Klem, 499 F.3d 199, 209 & n.10 (3d Cir. 2007) (surveying the federal circuits on whether qualified immunity is a question for the court or the jury and concluding that the Second Circuit "can be viewed as being on both sides of the issue, with the evolution being toward reserving the question for the court."; cf. Brown v. Schurlein, 199 Fed. Appx. 9, 10, 2006 U.S. App. LEXIS 19509, at **2 (2d Cir. July 28, 2006) ("Though we have suggested that the ultimate question on qualified immunity ought to be resolved by the court as a question of law, we have never definitively held as such."); Kent v. Katz, 125 Fed. Appx. 334, 335, 2005 U.S. App. LEXIS 2899, at **3 (2d Cir. Feb. 17, 2005) ("We have indicated, though not definitively held, that the ultimate question on qualified immunity should be resolved by the court as it is a question of law.").

Although Stephenson involved excessive force, rather than false arrest, its reasoning is directly applicable. Therefore, as a special interrogatory was not used in the initial trial in this case, and such factfinding by the jury is required in order for the Court to properly rule upon the qualified immunity issue, the Court must retry the false arrest claim in addition to the qualified immunity defense. As the Stephenson court concluded, there is a high likelihood of confusion, as well as "a risk that the effect of having an 'out' (by finding qualified immunity) affected the care with which the jury conducted" its inquiry of the underlying claim. Stephenson, 332 F.3d at 80. Therefore, upon retrial, the jury will be presented with specific interrogatories for resolution of any contested material facts pertaining to the false arrest claim, and based on the jury's responses, the Court will resolve the issue of the qualified immunity defense.

14

## Retrial on the Malicious Prosecution Clause is Denied

Bradley has presented no authority to establish his contention that the jury confusion on the qualified immunity issue in the false arrest claim prevented a verdict for him on his malicious prosecution claim. While the jury did ask for, and was given, a copy of the Court's instruction on the elements of malicious prosecution, see Court Ex. 10, the request for clarification alone does not evidence jury confusion sufficient to require a new trial.

The jury was instructed that the plaintiff must satisfy all four prongs of malicious prosecution in order to prevail on his malicious prosecution claim, namely initiation of a criminal proceeding, a termination of that proceeding in the plaintiff's favor, a lack of probable cause, and actual malice. See Rounseville v. Zahl, 13 F.3d 625, 628 (2d Cir. 1994). They were instructed that the first two prongs, initiation of a criminal proceeding and favorable termination, were satisfied. The jury was instructed that they could, but need not, infer malice from lack of probable cause. Therefore, although the jury found that Jusino did not have probable cause to arrest Bradley, the jury could reasonably and logically have found that

15

Jusino lacked malice, the fourth essential element of a malicious prosecution claim.

## Retrial of the False Arrest Claim Against Charles is Denied

Bradley contends that Charles' limited memory of the events of March 22, 2003, and his demeanor on the witness stand, together with his substantiated Civilian Complaint Review Board complaint for abuse of authority, established the lack of his credibility. The jury was instructed on determining the credibility of witnesses and heard the Jusino's testimony that Charles did not order him to arrest Bradley, as well as his identification of the someone other than Charles as the supervisor who did, in fact, gave the order.

Bradley has not established an appropriate basis for challenging the jury verdict with respect to Charles, and therefore, a new trial under Rule 59(b) is not warranted.

## The Instruction with Respect to "Vicinity"

Bradley has contended that the Court erred when it responded to the jury's note for a definition of the word "vicinity" by giving them the dictionary definition of the word. The jury, during its deliberations, requested the definition of the word "vicinity" as used with respect to supervisory liability in Question 5 of the Special Verdict Form. After Bradley's counsel objected to the suggestion that the jury was to rely upon its own understanding of the term "vicinity", the court gave the jury a dictionary definition of the term "vicinity". The jury was then allowed to draw its own inferences as to how the term "vicinity" should be interpreted and applied.

The court need not even define a common term for the jury. When words or terms are "reasonably within the common understanding of a juror," the court need not define the term. United States v. Crockett, 506 F.2d 759, 762 (5th Cir. 1975) cert. denied, 423 U.S. 824 (1975) (holding that a district court need not define the term "commercial gambling house" for the jury since it is "reasonably within the common understanding of a juror"); see also United States v. Sirois, 87 F.3d 34, 41 (2d Cir. 1996) (holding

17

that a district court need not define the term "use" for a jury) (citing United States v. Johnpoll, 739 F.2d 702, 712 (2d Cir. 1984) (holding that a district judge need not define the word "recently" because it is "neither outside common understanding nor so technical or ambiguous as to require specific definitions"), cert. denied, 469 U.S. 1075 (1984)). Bradley has cited no authority that giving the jury a dictionary definition of a word is reversible error.

**Conclusion**

For the reasons set forth above, the motion of Bradley for retrial of the verdict in favor of Jusino with respect to the qualified immunity defense is granted. Under the reasoning set forth in Stephenson, the jury's finding with regard to the underlying false arrest claim and the insufficiency of the Special Verdict Form with respect to that claim also require that the Court order a retrial of the false arrest claim.

It is so ordered.

New York, N.Y.
February 1✓ , 2008

　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　ROBERT W. SWEET
　　　　　　　　　　　　　　　　　U.S.D.J.